# McGehee, Driver & Co. v. Roberts.

*Action for Breach of Special Contract of Employment.*

1. *Waiver of breach, or cause of abandonment of contract.*—If an employee continues in the service of his employer for a month after an altercation or conversation between them, which would have justified him in leaving the service at once, he can not afterwards take advantage of it as an excuse or pretext for quitting the service.

2. *Discharge from service, or excuse for quitting; voluntary rescission of contract.*—A clerk in the employment of a partnership, having had an altercation w'th one of the partners relative to an increase of his wages, in which he was told that he might leave then if he was dissatisfied, continued in the service 'a month longer, when he sought an interview with another one of the partners, who again refused to increase his wages, whereupon he said that he would then accept the proposition to quit as made at the former interview, and a quarrel and abusive words then ensued between them; but, in the afternoon of the same day, before he left the house, on mentioning the subject to the two other partners, he was told by each that he would not be paid any thing if he quit. *Held,* that these facts showed neither a discharge from the service, nor an excuse for quitting it, nor a voluntary rescission of the contract.

3. *Variance; breach of contract, or rescission by consent.*—Where the complaint claims damages, in a single count, for an unauthorized discharge of plaintiff from defendant's service during the term, and the evidence shows a rescission of the contract by mutual consent during the term, a recovery can not be had for the wages earned before the rescission.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. JAMES R. DOWDELL.

This action was brought by J. B. Roberts against the appellants, a partnership, and was commenced on the 5th August, 1889. The complaint contained only a single count, claiming $200 as damages, for that defendants, on the 1st January, 1889, employed plaintiff as clerk, at a monthly salary of $37.50, from that time until January 1st, 1890; "and plaintiff avers that, on, to-wit, the 13th July, 1889, defendants discharged him from said employment, without fault on his part, to his damage as aforesaid." The defendants pleaded "the general issue, in short, by consent," and issue was joined on that plea; but the verdict of the jury was evidently founded on the allowance of a set-off. The plaintiff entered the service of the defendants, as a clerk in their store, on the 1st January, 1889. According to plaintiff's testimony, he was employed for the term of one year, at a monthly salary of

VOL XC.

[McGehee, Driver & Co. v. Roberts.]

$37.50; and according to defendants' testimony, the contract was for the term of one year, at a salary of $450. "It was admitted," as the bill of exceptions states, "that defendants had not paid plaintiff any part of his wages while in their service, and that he owed them $162.52 on account, for goods purchased by him while clerking for them." The verdict for plaintiff was for $82.23, the difference between his wages up to July 13th, and his admitted indebtedness to defendants.

The plaintiff, testifying in his own behalf, stated that he had an interview with McGehee, one of the defendants, "about a month previous to July 13th," and asked him to change the contract between them, as he was dissatisfied with it; and that McGehee replied, with an oath, "If you are not satisfied, you had better quit now." McGehee, testifying as a witness for defendants, stated the particulars of this interview in different words, and denied that he used any profane language, but admitted that he said, "If you are so dissatisfied, why don't you quit?" Plaintiff further testified, that he had an interview with Davis, another one of the defendants, on the afternoon of July 13th, and again asked why they would not change his contract; that Davis replied, "Simply because we don't want to be always changing our contracts;" that he then said, "Mr. McGehee told me the other day, 'If you are dissatisfied, you had better quit now;' I consider it a proposition, and I believe I will accept it;" that Davis then said he had not behaved in a becoming manner, and an altercation thereupon ensued between them, in which Davis threatened to strike him with a stick; that he then said to Davis, "I suppose after this you don't want me any longer;" and that Davis replied, "No, we don't." He testified, also, that he continued about the store the rest of the evening, and sold a pair of shoes to a customer, at the request of Driver, another one of the defendants; that he repeated to Driver, on the night of the same day, the substance of his interview with Davis; and that Driver then told him, they would not pay him any thing if he quit their service. Davis stated the particulars of his altercation with plaintiff in substantially the same language, but added, that he told plaintiff, at the end of their interview, that they would pay him nothing if he quit their service; and each of the defendants denied that he had discharged plaintiff, or had told him that he could quit.

The bill of exceptions purports to set out "all the evidence," the substance of which only is above stated. The court thereupon charged the jury, at the instance of the plaintiff: "Although the jury may find from the evidence that plaintiff wanted to change the contract, and quit; yet, if he did not

intend to do so without the consent of the defendants, and if they find that he quit because he was discharged, or because of language which would justify his leaving, then plaintiff can recover such damages as he has proved." The defendants excepted to this charge, and requested the following charge (with others): "(1.) If the jury believe all the evidence, the plaintiff can not recover in this action, and they must find for the defendants." The court refused each of the charges requested by the defendants, and they duly excepted. The charge given, and the refusal of the charges asked, are assigned as error.

N. D. DENSON, for appellants.

SAMFORD & CHILTON, *contra*.

STONE, C. J.—All the testimony agrees that Roberts ceased to serve appellants on July 13, 1889. He testifies, and McGehee confirms him in his statement, that the conversation, or altercation between him and McGehee, took place about one month before July 13. Roberts continued to serve the firm for a month after that altercation. This was a waiver by Roberts of all that occurred in that interview, as an excuse or pretext for quitting the service.—1 Brick. Dig. 396, § 276.

What took place with Davis on July 13, was neither a discharge of Roberts, nor an excuse for his quitting. If unpleasant words were used, it would seem that Roberts was, at least, not without fault in provoking them. And if McGehee, in the conversation a month before, said to Roberts, "If you are not satisfied, you had better quit now," this was no excuse for his quitting, for several reasons: *First*, it was not acted on by Roberts, but he continued in the service for a month afterwards. *Second*, when he announced on July 13 his willingness to treat McGehee's remark as a proposition, and then to accept it, he was informed both by Davis and Driver, the other partners, that if he quit them, he would not be paid any thing. It follows, that if McGehee's remark was a proposition for a consentive rescission of the contract for the balance of the year, that proposition was in effect withdrawn by the separate announcements of Davis and Driver, made before Roberts accepted and acted on it, that if he quit he would be paid nothing for his services. *Third*, if McGehee's remark was in any sense a proposition, it was a proposition for a consentive termination of the contract, or rescission of it for the residue of the year. If such proposition was made and accepted, it was, at most, a modification of the original contract, and would authorize a recovery by Roberts for the time he had served,

[Thomas v. Glazener.]

not for his unauthorized discharge, but according to the provisions of the modified contract, which absolved him from all duty of further service. The complaint in the present suit contains a single count, and its *gravamen* is an unauthorized discharge of plaintiff from the service of defendants. This would present a fatal variance between the allegations and proof, and prevent a recovery on this phase of the case.

Giving to the testimony in favor of the plaintiff its largest and most favorable interpretation, it fails to make a case which would authorize him to have it passed on by the jury.—*Davis v. Ayres*, 9 Ala. 292; *Ramey v. Holcombe*, 21 Ala. 567; *Fowler v. Armour*, 24 Ala. 194; *Strauss v. Meertief*, 64 Ala. 299; *Holloway v. Talbot*, 70 Ala. 389; *Wilkinson v. Black*, 80 Ala. 329; *Liddell v. Chidester*, 84 Ala. 508. The general charge—the first asked by defendants—ought to have been given.

Reversed and remanded.